# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

───────────────────────────────────────────────

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                     Case No. 11-CR-30

ERIC GRIFFIN and ERNEST CLARK,

        Defendants.

───────────────────────────────────────────────

## ORDER

On February 8, 2011, a federal grand jury in the Eastern District of Wisconsin returned a seventeen-count indictment against defendants Eric Griffin ("Griffin") and Ernest Clark ("Clark") for their alleged involvement in multiple bank robberies and accompanying violations of 18 U.S.C. § 924(c). Counts Three and Fourteen charge defendant Griffin with violations of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).

On February 25, 2011, the defendants appeared before United States Magistrate Judge Patricia J. Gorence, for arraignment, entering pleas of not guilty. On March 14, 2011, defendant Griffin filed two pretrial motions: (1) a motion to strike surplusage from Counts Three and Fourteen of the Indictment; and (2) a motion to suppress evidence obtained in violation of the Fourth Amendment.[1] (Docket #'s 17, 18). On that same date, defendant Clark filed a motion to dismiss based on speedy

---

[1] The issues raised in Griffin's motion to suppress were previously presented, considered, and denied in Case No. 09-CR-286. In that case, United States Magistrate Judge Aaron E. Goodstein recommended that United States District Judge Rudolph T. Randa deny the motion to suppress. Griffin filed an objection to the recommendation and the objection was pending before Judge Randa when the case was dismissed without prejudice on the government's motion.

trial violations (Docket #20) and a motion to suppress due to violations of Fed. R. Crim. P. 41 and search warrant defects. (Docket #22). On March 24, 2011, defendant Clark filed a motion to suppress because of an unlawful detention/*Riverside*[2] violation (Docket #31) and a motion and an amended motion to dismiss due to a violation of Article V of the Interstate Agreement on Detainers. (Docket #'s 21, 33).

On June 22, 2011, United States Magistrate Judge Gorence issued a recommendation to this court that: (1) defendant Griffin's motion to strike surplusage from Counts Three and Fourteen be granted; (2) that Griffin's motion to suppress evidence be denied; (3) that defendant Clark's motion to dismiss based on speedy trial violations be denied; (4) that Clark's motion to suppress due to Rule 41 violations and search warrant defects be denied; (5) that Clark's motion to suppress because of unlawful detention/*Riverside* violation be denied; and (6) that Clark's motion and amended motion to dismiss due to an alleged violation of Article V of the Interstate Agreement on Detainers be denied. (Docket #61). Griffin subsequently filed an objection to the Magistrate's recommendation challenging only the denial of his motion to suppress evidence in violation of the Fourth Amendment. (Docket #65). The government has not filed a response to Griffin's objection, nor has it filed any objection of its own to the Magistrate's recommendation. Similarly, defendant Clark has not filed an objection to the recommendation. Accordingly, the court will adopt

---

[2]*Riverside v. McLaughlin*, 500 U.S. 44 (1991).

the recommendation as to defendant Griffin's motion to strike surplusage and as to all of defendant Clark's motions. Moreover, after *de novo* review of Griffin's motion to suppress, the court will adopt the recommendation as to this motion.

## BACKGROUND[3]

On October 7, 2009, Officer Joseph Warren ("Warren") of the Milwaukee Police Department sought and obtained a search warrant targeting a residence in Milwaukee, Wisconsin. The search warrant was issued by Laura Gramling Perez, a Judicial Court Commissioner of the First Judicial District of Wisconsin. The search warrant stated that defendant Eric Griffin occupied the residence. The warrant authorized the search of "all storage areas accessible to [the residence] and all persons present on the premises, certain goods, autos, chattels and property, including firearms, documents, utility bills, keys, and other items used to show who is in control of the premises."

In seeking this search warrant, Officer Warren presented the commissioner with an affidavit detailing an investigation in which an allegedly reliable informant contacted Warren to report that sometime within the seven-day period prior to October 7, 2009, the informant had visited the residence and "observed Eric Griffin in possession of a black semi-automatic machine pistol with an extended magazine."

---

[3]Unless otherwise noted, the court's discussion of the facts underlying this matter is derived from defendant Griffin's motion to suppress and the government's response to the motion to suppress. (Docket #'s 18, 30).

-3-

Warren further reported having personally "observed Eric Griffin exit the front door of [the residence] and secure the front door with a key."

On October 8, 2009, Warren and other Milwaukee Police Officers were conducting surveillance outside the targeted residence. Prior to executing the warrant, the officers observed Griffin exiting the residence and driving away in a Cadillac Escalade. The officers stopped Griffin's vehicle in a gas station parking lot not far from the residence, read the search warrant to Griffin and took his keys. The officers then returned to the target residence and executed the search warrant, using the keys seized from Griffin to enter the residence. Inside, the officers seized four firearms, ammunition, a ski mask, papers of dominion and control, scales, and small amounts of marijuana and cocaine. As a result, defendant Griffin was charged with, among other offenses, possession of a firearm by a convicted felon. Griffin now asserts that the seizure of the keys from his person and the firearms and other items from his residence violated his rights under the Fourth Amendment.

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 636(b)(1)(B), a magistrate judge may consider dispositive motions, such as motions to suppress, and issue recommendations to the district judge regarding the motions. *See id.* When a party objects to a magistrate's findings, the district court judge must make *de novo* determinations as to these findings. *See id.* § 636(b)(1)(C); *see also Delgado v. Bowen,* 782 F.2d 79 (7th Cir. 1986). The district court may adopt the recommendation in part or in its entirety and

has the final authority of judgment in the case. *Delgado*, 782 F.2d at 82. If necessary, the district court "may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court has reviewed the evidence and finds it sufficient to make factual determinations on those records alone.

## ANALYSIS

Defendant Griffin asserts three arguments in support of his motion to suppress. First, Griffin asserts that the affidavit in support of the search warrant fails to establish a probability that firearms would be found in the target residence. Second, Griffin maintains that the police unlawfully seized his keys. Lastly, Griffin argues that the search warrant at issue in this case is void as it was issued by a circuit court commissioner and court commissioners lack the authority to issue search warrants under Wisconsin law. The court will address each argument in turn.

### I. The Probability that Firearms Would be in the Target Residence

First, Griffin contends that the affidavit submitted in support of the search warrant failed to establish probable cause that a firearm would be found within the targeted residence on or after October 7, 2009. In determining whether probable cause exists to support a search warrant, a judge must consider the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Brack*, 188 F.3d 748, 755 (7th Cir. 1999). "When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on

the strength of the affidavit." *United States v. Peck*, 317 F.3d 754, 755-56 (7th Cir. 2003) (citing *United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967)). An affidavit has made a proper showing of probable cause when it sets forth facts "sufficient to induce a reasonably prudent person to believe that a search . . . will uncover evidence of a crime." *United States v. McNeese*, 901 F.2d 585, 592 (7th Cir. 1990). Probable cause "does not mean certainty, or even more likely than not," but it does require more than a mere suspicion. *Hanson v. Dane Cnty, Wis.,* 608 F.3d 335, 338 (7th Cir. 2010) (citing *Gates*, 462 U.S. at 235); *McNeese*, 901 F.2d at 592.

The task of the judicial officer issuing the warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Newsom*, 402 F.3d 780, 782 (7th Cir. 2005) (quoting *Gates*, 462 U.S. at 238). The probable cause determination of the judicial officer who issued the warrant is entitled to great deference. *Gates*, 462 U.S. at 236. The court may only upset a probable cause determination if there was not a "substantial basis" for the issuing court to believe that a search would uncover evidence of wrongdoing. *Id.* A substantial basis does not exist when the supporting affidavit, "read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are

associated with the crime and located in the place indicated." *United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999).

Where information from an informant is used to establish probable cause, as here, courts assess the informant's credibility by considering various factors, including: "(1) whether the informant personally observed the events, (2) the degree of detail shown in the informant's statements, (3) whether the police independently corroborated the information, (4) the interval of time between the events and application for a warrant, and (5) whether the informant appeared in person before the judicial officer who issued the warrant." *United States v. Mykytiuk*, 402 F.3d 773, 776 (7th Cir. 2005) (citing *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002)). However, none of these factors is determinative. Rather, "a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." *United States v. Brack*, 188 F.3d at 756.

In this case, the affidavit at issue states that a confidential informant who was in the target residence in the past seven days observed the defendant in possession of a "black semi-automatic machine pistol with an extended magazine." (Aff. ¶ 4) (Case No. 09-CR-286, Docket #16-1). Moreover, the affidavit noted that the informant provided a description of the target residence and identified the defendant from a photo lineup. (Aff. ¶ 5). Thus, the informant personally observed the events and gave a fairly detailed description of the firearm, the residence, and the defendant. Griffin argues that the level of detail of the informant's statements is

under-developed as the informant failed to explain the extent of Griffin's connection – beyond his mere presence – with the residence or the circumstances of Griffin's handling of the firearm within the residence. Griffin is correct that certain information is not provided in the affidavit. Although Griffin was observed with a gun at the residence, the affidavit does not explicitly indicate that the firearm was stored at the residence or that Griffin was handling the firearm in such a way as to establish his clear possession of the gun. Furthermore, the police did not corroborate the informant's observations. In other words, there were no other witnesses that reported seeing Griffin with a firearm.

However, that said, the affidavit establishes that the informant had been repeatedly reliable in the past. The affiant showed that information from the informant had led to the issuance of 10 search warrants in which large amounts of currency, controlled substances and over 10 firearms were recovered. (Aff. ¶ 6). The affiant showed that the informant had made five controlled purchases of controlled substances for law enforcement and that information provided by the informant about drug trafficking and other crimes was confirmed by information known to affiant and other law enforcement officers. (Aff. ¶ 6). Thus, the fact that the informant's observations in this case were uncorroborated does not necessarily indicate that the informant's credibility was lacking because it is balanced by the fact that information provided by the informant in the past was repeatedly corroborated and found to be accurate. Indeed, the court also finds that the strong showing of the

informant's past reliability compensates for the affidavit's deficiencies in detailing Griffin's connection to the residence and the specifics of his handling of the firearm.

Further support for the probable cause finding lies in the fact that the affiant observed Griffin locking the door of the residence with a key. While this does not establish that Griffin lived at the residence as assuredly as the residence's address on Griffin's driver's license would, it does establish that Griffin exercised some degree of control over the target residence. Furthermore, the time between the informant's observation and the issuance of the search warrant was short (no more than seven days) – at least when considering the non-fungible nature of a firearm. *See United States v. Harju*, 466 F.3d 602, 608 (7th Cir. 2006) (concluding that a firearm, unlike small amounts of drugs or cash, is unlikely to have been sold in three weeks time). Therefore, considering the totality of the circumstances and giving "great deference" to the court commissioner who issued the warrant, the court concludes that Warren's affidavit was sufficient to support the probable-cause finding.

Even if the court were to conclude that the affidavit was insufficient to establish probable cause, the evidence obtained in the execution of the warrant need not be suppressed if the police relied on the warrant in good faith. *See United States v. Leon,* 468 U.S. 897, 920–21 (1984). An officer's decision to seek a warrant is prima facie evidence that the officer was acting in good faith. *United States v. Watts*, 535 F.3d 650, 657 (7th Cir. 2008). The good-faith exception thus applies unless the

affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" or the warrant-issuing judge "wholly abandoned" his neutral judicial role and "serve [d] merely as a rubber stamp for the police." *Leon*, 468 U.S. at 923. Based on the court's analysis of the affidavit above, the court cannot say that it was "so plainly deficient that any reasonably well-trained officer 'would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.'" *United States v. Koerth*, 312 F.3d at 869 (quoting *Malley v. Briggs,* 475 U.S. 335, 345 (1986)).

II. **Seizure of Griffin's Keys**

Griffin was stopped by law enforcement several blocks away from the target residence and, as a result, his keys were seized. This occurred before the police discovered the firearms pursuant to their execution of the search warrant. Griffin argues that because the police did not have probable cause to arrest him at the time the keys were seized and because the police had no other lawful basis to seize his keys, the keys must be suppressed. Here, it is clear that the search warrant did not authorize the search of Griffin. The warrant only authorized the search of "all persons present on the premises." When the police searched Griffin, he was not on the premises. Therefore, the police had no authority – via the search warrant – to search Griffin.

However, the court concludes that the search of Griffin and the subsequent seizure of his keys was permissible as the keys were seized during a lawful search

incident to a lawful arrest based upon probable cause. First, it should be noted that warrantless searches are *per se* unreasonable under the Fourth Amendment – subject to a few exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967). Among the exceptions to the warrant requirement is a search incident to a lawful arrest. *See Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 1716 (2009) (citing *Weeks v. United States*, 232 U.S. 383, 392 (1914)). The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations. *Id.* (citing *United States v. Robinson,* 414 U.S. 218, 230-234 (1973)).

For the search of Griffin and the seizure of his keys to be lawful, his arrest must also have been lawful, meaning it must have been based on probable cause. For the same reasons that the search warrant established probable cause to search the target residence, the search warrant also demonstrates that probable cause existed to arrest Griffin for the crime of possession of a firearm by a felon. Again, Griffin maintains that probable cause for his arrest was lacking because such a finding requires more than a reliable informant's mere assertion that Griffin had been seen with a gun several days before. Yet, as previously discussed in detail above, the court considered the totality of the circumstances, not simply the informant's assertions in concluding that the affidavit was sufficient to support the probable-cause finding. For instance, the affidavit demonstrates that Griffin was a convicted felon, that a confidential informant observed Griffin with a firearm within

-11-

the past seven days in the target residence, that the informant was reliable, and that Griffin had exited and locked the target residence with a set of keys, thereby demonstrating some degree of control over the residence. While the court recognizes that the affidavit is lacking in certain details that would elevate the probable-cause finding to a more definite position on the spectrum of probability, at the same time, the court concludes that the affidavit rises above the level of mere suspicion and sets forth sufficient evidence to induce a reasonably prudent person to believe that Griffin committed the crime for which he was arrested. Furthermore, because the keys constitute evidence of the offense of arrest, in that they demonstrate Griffin had access to the location where the informant observed him with the firearm – the seizure of the keys was authorized as part of a lawful search incident to Griffin's lawful arrest. *See Arizona v. Gant*, 556 U.S. 332.

### III.    Authority of Court Commissioners

Lastly, Griffin argues that the search warrant is null and void because it was issued by a court commissioner. In his motion to suppress, Griffin contends that court commissioners are not authorized to issue search warrants under the Wisconsin Constitution, in part, because any explicit reference to the position was removed from Article VII of the Wisconsin Constitution as a result of a 1977 amendment. Griffin further avers that judicial authority is vested in the judicial branch under the Wisconsin Constitution and the legislature alone cannot create a separate office of court commissioner to exercise judicial functions. Griffin also

contends that the judiciary lacks the inherent authority to delegate its functions to another officer.

Contrary to Griffin's assertions in his motion to suppress and his objection to the magistrate's recommendation, the issue before the court is not whether the search warrant satisfies state law, but instead, whether the warrant satisfies the Fourth Amendment. *See Virginia v. Moore*, 553 U.S. 164 (2008) (upholding arrest supported by probable cause under the Fourth Amendment, even though it violated state law). Indeed, as the Sixth Circuit noted in rejecting a similar argument based on state warrant-issuing practices: "In federal court, when the Exclusionary Rule is at issue, the only applicable law is the Federal Constitution." *United States v. Franklin*, 284 Fed. Appx. 266, 269 (6th Cir. 2008).

The constitutional test for the issuance of a warrant is that it be based on probable cause and that it be issued by a neutral and detached magistrate. *Johnson v. United States*, 333 U.S. 10, 14 (1948). In *Shadwick v. City of Tampa*, 407 U.S. 345 (1972), the Supreme Court elaborated on the necessary qualifications of a "neutral and detached" magistrate. The issue in that case was whether municipal court clerks, authorized by the charter of Tampa, Florida, to issue arrest warrants, qualified as "neutral and detached" magistrates for purposes of the Fourth Amendment. *Id*. at 345-46. The Supreme Court concluded that they did qualify even though state law did not require the clerks to have a law degree or special legal training. *Id*. Part of the Court's rationale was that the municipal court clerks, though

not lawyers or judges, were employees of the judicial branch of the city of Tampa and were disassociated from the role of law enforcement. *Id.* at 352. In its reasoning, the Court also noted that "[t]he substance of the Constitution's warrant requirements does not turn on the labeling of the issuing party." *Id.* at 350.

In this case, Griffin attempts to distinguish *Shadwick* as a "qualification" case rather than an "authorization" case. In other words, he contends that the question in *Shadwick* was only whether a person authorized to issue warrants must be a lawyer or judge, whereas the question in this case is whether the individual issuing the warrant has the authority to do so under state law. Accordingly, Griffin argues that any reliance on *Shadwick* is misplaced. However, Griffin's distinction is insignificant when considering that the central issue here is whether Wisconsin court commissioners are neutral and detached such that their issuance of a search warrant comports with the Fourth Amendment, not whether Wisconsin law authorizes court commissioners to issue search warrants. Framing the issue in this way, the Supreme Court's analysis in *Shadwick* is instructive as it makes clear that "[s]tates are entitled to some flexibility and leeway in their designation of who may issue warrants" and all that the Fourth Amendment requires is that the issuing official be neutral and detached and capable of making a probable-cause determination. *Id.* at 353. In the present case, Griffin does not allege that Wisconsin court commissioners lack neutrality or detachment. Nor does he argue that implicit in the concept of a neutral and detached issuing magistrate is the requirement that the

issuing official have some cognizable authority under state law to issue warrants. In any event, this requirement appears to be met as the Wisconsin legislature has specifically provided that circuit court commissioners may issue search warrants. Wis. Stat. § 757.69(1)(b). Furthermore, while the *Shadwick* Court declined to decide whether a state could "lodge warrant authority in someone entirely outside the sphere of the judicial branch," *Shadwick*, 407 U.S. at 352, Wisconsin court commissioners – whatever the precise scope of their authority under the Wisconsin constitution – are a part of the Wisconsin judicial branch. *See* Wis. Sup. Ct. R. 75.02 (stating that court commissioners "perform limited judicial and quasi-judicial functions under the direction and authority of the chief judge and judges of the circuit."). Accordingly, not only does Wisconsin law grant court commissioners the authority to issue warrants, but, also, the defendant has not shown that the Fourth Amendment requires that court commissioners be authorized by the Wisconsin Constitution to issue search warrants. As such, the court must reject Griffin's argument in this respect. Consequently, the court finds no basis to conclude that the search that occurred here was in violation of the Fourth Amendment, and Griffin's motion to suppress will be denied.

Accordingly,

**IT IS ORDERED** that the June 22, 2011 recommendation of Magistrate Gorence (Docket #61) that: (1) defendant Griffin's motion to strike surplusage from Counts Three and Fourteen be granted; (2) that Griffin's motion to suppress

evidence be denied; (3) that defendant Clark's motion to dismiss based on speedy trial violations be denied; (4) that Clark's motion to suppress due to Rule 41 violations and search warrant defects be denied; (5) that Clark's motion to suppress because of unlawful detention/*Riverside* violation be denied; and (6) that Clark's motion and amended motion to dismiss due to an alleged violation of Article V of the Interstate Agreement on Detainers be denied be and the same is hereby **ADOPTED;**

**IT IS FURTHER ORDERED** that defendant Griffin's motion to strike surplusage from Counts Three and Fourteen (Docket #17) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that defendant Griffin's motion to suppress evidence obtained in violation of the Fourth Amendment (Docket #18) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that defendant Clark's motion to dismiss based on speedy trial violations (Docket #20) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that defendant Clark's motion to suppress due to Rule 41 violations and search warrant defects be denied (Docket #22) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that defendant Clark's motion to suppress because of unlawful detention/*Riverside* violation (Docket #31) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that defendant Clark's motion and amended motion to dismiss due to an alleged violation of Article V of the Interstate Agreement on Detainers (Docket #'s 21, 33) be and the same are hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 2nd day of August, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge