# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

v.

ERNEST CLARK,

                Defendant.

Case No. 11-CR-30-JPS

ORDER

On February 8, 2011, a federal grand jury sitting in the Eastern District of Wisconsin returned a sixteen-count indictment against defendants Eric Griffin and Ernest Clark ("Clark") for their alleged involvement in multiple bank robberies and accompanying firearms violations. On February 25, 2011, Clark appeared before United States Magistrate Judge Patricia J. Gorence for arraignment, entering pleas of not guilty. On March 14, 2011, Clark filed a motion to dismiss based on speedy trial violations (Docket #20) and a motion to suppress due to violations of Fed. R. Crim. P. 41 and search warrant defects. (Docket #22). On March 24, 2011, Clark filed a motion to suppress because of an unlawful detention/*Riverside*[1] violation (Docket #31) and a motion and an amended motion to dismiss due to a violation of Article V of the Interstate Agreement on Detainers ("IAD"). (Docket #'s 21, 33).

On June 22, 2011, Magistrate Gorence issued a recommendation to this court that each of these motions be denied. (Docket #61). Clark failed to file a timely objection to the recommendation and, therefore, this court adopted the magistrate's recommendation as to all of Clark's motions on August 2,

---

[1] *Riverside v. McLaughlin,* 500 U.S. 44 (1991).

2011. (Docket #70).[2] On August 23, 2011, Clark filed a "Motion for Relief from Counsel's Unauthorized Prejudicial Waiver of Defendant's Right to File Objections to Report and Recommendation of Magistrate" (Docket #82), arguing that his prior counsel did not advise him that a report and recommendation had been filed on June 22, 2011, and then refused the defendant's request to file objections to that document. Accordingly, Magistrate Gorence granted the defendant leave to file objections to that report and recommendation. On November 1, 2011, Clark filed his objections in this regard. (Docket #117). The government has not filed a response to Clark's objection, nor has it filed any objection of its own to the magistrate's recommendation. Accordingly, the court will conduct a *de novo* review of Clark's motions addressed in the June 22, 2011 magistrate report and recommendation.

Moreover, on August 2, 2011, the defendant filed three motions: (1) a Motion to Dismiss the Indictment for Violation of the IAD (Docket #73); (2) a Motion for Return of Property Pursuant to Rule 41(g) (Docket #72); and (3) a Motion to Dismiss the Indictment for Violation of Substantive Due Process. (Docket #71). On September 16, 2011, Magistrate Gorence issued a recommendation to this court that: (1) Clark's motion to dismiss based on a violation of the IAD be denied; and (2) Clark's motion to dismiss based on violations of substantive due process be denied. (Docket #103). Magistrate Gorence also issued an order denying the defendant's motion for return of property pursuant to Rule 41(g). (Docket #103). Clark filed objections to this

---

[2]Also on August 2, 2011, the magistrate granted the defendant's request to represent himself and stand-by counsel was appointed for him.

recommendation and order on October 3, 2011. (Docket #108). The government has not responded to the defendant's objections. Accordingly, the court will also review Clark's motions in this regard.

Lastly, on September 6, 2011, Clark filed a request for an evidentiary hearing. (Docket #94). On October 13, 2011, the magistrate issued an order denying Clark's request for an evidentiary hearing. Clark has since filed an objection to that order. Therefore, the court will also address this motion.

1.    Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B), a magistrate may consider dispositive motions and issue recommendations to the district judge regarding the motions. *See id.* When a party objects to a magistrate's findings, the district court judge must make *de novo* determinations as to these findings. *See id.* § 636(b)(1)(C); *see also Delgado v. Bowen,* 782 F.2d 79 (7th Cir. 1986). The district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate and has the final authority of judgment in the case. *Delgado*, 782 F.2d at 82. When a magistrate issues an order on a nondispositive motion, the court will only disturb the magistrate's order if it was clearly erroneous or otherwise contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed.R.Crim.P. 59(a) (defining procedure for nondispositive motions before a magistrate).

2.    Motion to Dismiss Based on Speedy Trial Violations

Clark asserts three arguments in support of his motion to dismiss the indictment against him based on speedy trial violations, including that: (1) the government failed to indict him within 30 days of his arrest as required by 18 U.S.C. § 3161(b); (2) the government failed to bring him to trial within

the time limits prescribed by 18 U.S.C. § 3161(c)(1); and (3) he has been denied his right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution. Before addressing each of defendant's arguments, the court will first discuss the relevant facts.

### 2.1    Background

Here, Milwaukee Police Department officers arrested Clark on October 8, 2010. At the time of his arrest, Clark was wanted for armed robbery. However, the government posits that Clark, who fled from officers, was ultimately arrested for fleeing an officer. Clark, on the other hand, argues he was arrested for armed robbery. On October 12, 2010, Clark was charged in Milwaukee County Circuit Court with Felony Eluding in Case No. 10-CF-5161. On that same date, Clark was charged by criminal complaint in the Eastern District of Wisconsin, Case No. 10-M-554, with armed robbery of the Pyramax Bank on August 18, 2010, and with using a firearm in furtherance of a bank robbery. Magistrate William Callahan signed a warrant for Clark's arrest and, pursuant to the warrant, the Federal Bureau of Investigation filed a detainer against Clark with the Milwaukee County Sheriff, who was holding Clark on the state eluding charge. On November 23, 2010, Clark was sentenced to 7 months in jail on the state eluding charge. On February 8, 2011, a federal grand jury sitting in the Eastern District of Wisconsin returned an indictment charging Clark with six counts of armed bank robbery and six counts of using a firearm in furtherance of the bank robberies. The robberies are alleged to have taken place at six Milwaukee area banks between October of 2008 and August of 2010. Clark made his initial appearance and was arraigned on these charges on February 25, 2011.

## 2.2 Failure to Indict Within 30 Days

First, Clark argues he was not indicted within 30 days of his arrest, in violation of his rights under 18 U.S.C. § 3161(b). Specifically, Clark argues that his arrest on October 8, 2010, by Milwaukee Police Department officers constituted a federal arrest, triggering the 30-day clock. Because he was not indicted until February 8, 2011 – four months later – Clark argues his speedy trial rights were violated.

The Speedy Trial Act required the federal government to indict Clark within 30 days after arresting him. 18 U.S.C. § 3161(b). Section 3161(b) states, in relevant part, that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within [30] days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). The remedy for such a failure is dismissal. 18 U.S.C. § 3162(a)(1). Thus, the main question for the court is whether the defendant's October 8, 2010 arrest triggered § 3161(b).

Clark argues that his October 8, 2010 arrest was a federal arrest as it was for armed robbery of the Pyramax Bank and, therefore, it was in connection with subsequent federal charges. However, this argument is unavailing. Whether or not Clark's arrest could be said to have been for armed robbery, Clark fails to account for the fact that an arrest does not start the § 3161(b) 30-day period running unless a criminal charge is lodged. *United. States v. Janik,* 723 F.2d 537, 542 (7th Cir. 1983). No federal charge was lodged against Clark as of October 8, 2010. Thus, the 30-day clock clearly did not begin to run when Clark was arrested on October 8, 2010. Indeed, it does not even appear that state charges were pending against Clark at the time of his arrest. Even if this were the case, "an arrest by state officers on state

charges does not start the running of the 30-day period." *Id.* (citing *United States v. Iaquinta,* 674 F.2d 260, 267–68 (4th Cir. 1982) and *United States v. Wilson,* 657 F.2d 755, 767 n. 17 (5th Cir. 1981)).  Thus, no matter what crime Clark was actually arrested for, when the defendant was taken into state custody on October 8, 2010, the 30-day clock was not triggered.

The next question before the court is whether the filing of a federal complaint and the lodging of a federal detainer on October 12, 2010, qualify as an "arrest" within the meaning of § 3161(b) to trigger the Speedy Trial Act protections. First, it should be noted that many circuits have held that, by itself, a complaint is insufficient to trigger the Speedy Trial Act protections. *See United States v. Bagster*, 915 F.2d 607, 611 (10th Cir. 1990) (federal complaint, alone, does not trigger the Speedy Trial Act clock); *United States v. Bloom,* 865 F.2d 485, 491 (2d Cir. 1989) (filing of a federal complaint is insufficient to trigger Speedy Trial Act timing provisions); *United States v. Johnson*, 815 F.2d 309, 312 (5th Cir. 1987) (same).[3]

The majority of circuits require the filing of a federal complaint *and* a federal arrest in connection with that complaint to trigger the Act. *See United States v. Henson*, 945 F.2d 430, 436 (1st Cir. 1991) (in order for § 3161(b) to apply, both a federal complaint and a federal arrest and/or summons are required); *Johnson*, 815 F.2d at 312 (filing of a federal complaint does not, in the absence of a federal arrest in connection with that complaint, trigger the Act's protections). Courts have interpreted "arrested" within the meaning of

---

[3] *But see United States v. Peterson*, 698 F.2d 921, 923 (8th Cir. 1982) (the thirty-day clock begins to run upon filing of a complaint); *cf. United States v. Solomon,* 679 F.2d 1246 (8th Cir. 1982); *United States v. Jones*, 676 F.2d 327 (8th Cir. 1982).

the Act to mean taken into federal custody based on the federal complaint, *Bagster*, 915 F.2d at 611, or any concurrent action depriving a defendant of his liberty. *Bloom*, 865 F.2d at 491; *see also United States v. Rezaq*, 899 F.Supp. 697, 705 (D.D.C.1995) (federal arrest requires a "federal deprivation of liberty," and such deprivation cannot occur until the defendant is turned over to federal authorities).

Here, state officials arrested Clark, and he was in state custody at the time the federal complaint was filed against him. Thus, at first blush, it does not appear that Clark was ever taken into federal custody based on the federal complaint. However, the question then becomes whether the federal detainer filed against him by the FBI qualifies as an arrest within the meaning of the Act. In other words, was the lodging of a federal detainer against the defendant while in state custody a federal deprivation of liberty that triggers the Act? Several circuits have considered this question

The Eleventh Circuit held that a federal detainer does not qualify as an arrest until the defendant is turned over by the state authorities to the federal authorities. *United States v. Shahryar*, 719 F.2d 1522, 1524 (11th Cir. 1983). In *Shahryar*, a case closely analogous to the case at hand, the defendant was first arrested by state authorities on arson charges. About a year later, a federal criminal complaint was filed against the defendant based on alleged violations of federal statutes. The magistrate issued an arrest warrant. This warrant was lodged with the state authorities as a detainer against the defendant. Several months later, the state bond was reduced and the defendant posted bond on the state charges and federal custody began. About two weeks later, the defendant was indicted. The question before the

*Shahryar* Court was whether the filing of a federal warrant of arrest as a detainer with the state of Florida constituted an "arrest" under the Act which would trigger the time limits of the Act. The court held that there was no federal arrest of the defendant and that he was not taken into federal custody until he was turned over by the state authorities to the federal authorities. *Id.* at 1524 (citing *United States v. Iaquinta,* 674 F.2d 260, 264 (4th Cir. 1982)). Therefore, in Shahryar's case, the starting date for purposes of the Act was the date that he was delivered into federal custody. *Id.* at 1525.

The Second, Fifth, Sixth, and Tenth Circuits have also considered this issue and held that a federal detainer filed with state authorities is not a federal arrest within the meaning of § 3161(b). *United States v. Bloom*, 865 F.2d 485 (2d Cir. 1989); *Johnson*, 815 F.2d at 312, n. 2; *United States v. Copley*, 774 F.2d 728 (6th Cir. 1985); *Bagster,* 915 F.2d at 610. In *Johnson*, on November 27, 1984, a state police officer and secret service agents arrested Johnson on a California warrant for theft. Immediately after the arrest, the agents took him into federal custody, searched him, questioned him about his counterfeiting activities, and inventoried his car. Within twenty-four hours of his arrest, the agents brought Johnson before a state judge. He waived extradition and was returned to California where he remained in custody until March 15, 1985, when he was released on bail pending trial. In the meantime, the government filed a federal complaint on December 11, 1984, charging Johnson with unauthorized possession of altered credit cards and cardholder information. On that same day, a magistrate issued a warrant for Johnson's arrest. Following his March 15, 1985 release on bail, Johnson was returned to Texas pursuant to a federal detainer to face federal charges. On April 3, 1985, a

grand jury indicted Johnson on eight counts of credit card fraud. Similar to Clark in this case, Johnson claimed that his Speedy Trial Act rights were violated because the clock was triggered when he was first arrested by agents on November 27, 1984. *Johnson,* 815 F.2d at 311.

The issue before the Fifth Circuit, then, was whether the government's filing of a federal complaint triggered the Act. The *Johnson* court held that the "filing of a federal complaint does not, in the absence of a federal arrest in connection with that complaint, trigger the time requirement of 3161(b). This is true even when the accused, as here, is in state custody at the time the federal complaint is filed, for it is only a federal arrest that triggers 3161(b). A distinct, but closely related, question is whether a federal detainer filed with state authorities is a federal arrest within the meaning of 3161(b)... [I]t is not." *Id.* at 312. Like the *Shahryar* court, in *Johnson*, the court concluded that Johnson was not arrested within the meaning of section 3161(b) until he was turned over to federal officials following his release from state custody on March 15, 1985. It was only at that point that Johnson was under arrest in connection with formal charges on which he was eventually convicted. *Id.* Johnson was indicted on April 3, 1985, within thirty-days of his arrest and, therefore, the government did not violate the Act. *Id.*

In *Bagster*, the Tenth Circuit also had to determine whether the Speedy Trial Act's 30-day clock began to run when federal officials filed a complaint against Bagster. 915 F.2d at 610. The *Bagster* court held that "a person is not 'arrested in connection with' a charge, within the meaning of Section 3161(b) of the Speedy Trial Act, unless there is some coincidence of (1) a pending federal complaint and (2) federal custody based on that complaint." *Id.* at 611.

Therefore, in Bagster's case, the pending federal complaint against Bagster did not coincide with federal custody until Bagster was remanded to the custody of the U.S. Marshal on July 26, 1989. Accordingly, because he was indicted within thirty days, there was no Speedy Trial Act violation. *Id.*

Finding the approach of these circuits persuasive, this court concludes that, in order to trigger the Act, a federal complaint must be filed and the defendant must be arrested in connection with that complaint. A defendant is "arrested" if he is taken into federal custody to respond to a federal charge or is subject to some federal action that deprives the defendant of his liberty. Lodging a federal detainer against a defendant in state custody, however, does not qualify as an arrest or, in other words, it does not qualify as a deprivation of liberty under the Act.

Thus, in this case, though Clark's literal reading of § 3161(b) is not entirely inaccurate, persuasive case authority makes clear that his position is without sufficient support. Here, Clark was in state custody when the government filed a federal complaint against him. At the same time, the FBI also filed a federal detainer against him because he was in state custody. The docket in this case reflects that the Indictment was returned on February 8, 2011, while Clark was still in state custody. (Docket #1-2). Following the guidance of *Shahryar*, *Johnson,* and *Bagster*, this court concludes that Clark was not arrested within the meaning of § 3161(b) before his indictment on February 8, 2011. Therefore, the government did not violate § 3161(b).

2.3     Statutory Right to a Speedy Trial

Pursuant to the Speedy Trial Act, the trial of an accused must commence "within seventy days from the filing date (and making public) of

the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). The statute further provides that various periods of delay are to be excluded from the calculation of the seventy-day period. 18 U.S.C. § 3161(h)(1)-(9). Such periods of excludable time include "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). Also included as excludable time is "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

In this case, Clark made his first appearance on the indictment on February 25, 2011. He filed his motion to dismiss a mere seventeen days later, on March 14, 2011. Thus, his motion is decidedly premature. It appears that Clark argues the delay between the filing of the federal criminal complaint against him on October 12, 2010, triggered the seventy-day clock and that his initial appearance was delayed in bad faith. However, what the defendant fails to comprehend is that the seventy-day trial clock is not concerned with the filing of a criminal complaint. Instead, the Speedy Trial Act clearly states that the trial of an accused must commence within seventy days from the filing date of the information or indictment or the defendant's initial appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1). Defendant's initial appearance on the indictment – the later of the two events – is the significant

date for Speedy Trial Act purposes. And, as far as the court can discern, the speedy trial clock has not yet expired due to periods of excludable delay based on ends of justice continuances and the filing of pretrial motions. Moreover, any argument stemming from the pre-indictment delay has been addressed by this court in the previous subsection. Accordingly, there has been no Speedy Trial Act violation in this case.

Next, Clark argues that the magistrate failed to make express findings with respect to the grounds for the ends of justice continuance entered on March 29, 2011. This argument was not raised in Clark's original motion to dismiss as that motion was filed well before the continuance was granted. However, even so, the court finds that Clark's argument in this respect is without merit. The magistrate made explicit ends of justice findings that are supported by the record.

### 2.4    Constitutional Right to a Speedy Trial

The Sixth Amendment to the United States Constitution states that, in "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. Amend. VI.    In considering a defendant's Sixth Amendment speedy trial challenge, the court must apply a four-part test:  (1) whether the delay before trial was uncommonly long; (2) whether the government or the defendant is more to blame for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant suffered prejudice from the delay. *Barker v. Wingo,* 407 U.S. 514, 531, 92 S. Ct. 2182 (1972).  The first factor acts as a "triggering mechanism," in that unless a "presumptively prejudicial amount of time elapsed…it is unnecessary to

conduct a searching analysis of all the factors." *United States v. Oriedo,* 498
F.3d 593, 596 (7th Cir. 2007).

Here, the defendant objects to the magistrate's conclusion that his
Sixth Amendment right to a speedy trial did not attach until he was indicted.
Rather, Clark argues that his right to a speedy trial attached at the time of his
October 8, 2010 arrest. As Clark correctly asserts, the Supreme Court has held
that "it is either a formal indictment or information or else the actual
restraints imposed by arrest and holding to answer a criminal charge that
engage the particular protections of the speedy trial provision of the Sixth
Amendment." *Dillingham v. United States*, 423 U.S. 64, 65 (1975). However,
as previously noted, Clark was not arrested by federal officers as of
October 8, 2010. Therefore, his speedy trial right did not attach at this time.
Even if the court were to assume as much, Clark is expected to be tried in
January of 2012 – a little over a year from the date of his arrest. Accordingly,
the delay in bringing him to trial is not exceedingly long, and it has as much
to do with Clark's filing of numerous pretrial motions, as it does with the
government's actions. What is more, it does not appear that the defendant
has suffered any great prejudice as a result of the delay. Accordingly, the
court will adopt the magistrate's recommendation with respect to all of
defendant's speedy trial arguments.

3.      Violation of the Interstate Agreement on Detainers

Clark seeks an order dismissing the indictment for violating his rights
under the IAD, 18 U.S.C.  app. § 2. First, Clark asserts that the indictment
must be dismissed because the FBI placed an illegal detainer against him
while he was under a sentence imposed by the Milwaukee County Circuit

Court and under the supervision of the Milwaukee County Sheriff. (Docket #21). Clark also asserts that he has been shuttled to and from federal custody on the indictment in violation of the anti-shuttling provisions of the IAD. (Docket #33). Lastly, Clark seeks dismissal under § IV(c) of the IAD, arguing he was not brought to trial within one hundred and twenty days of being taken into federal custody on the charges he now faces. (Docket #73). The court will address each argument in turn.

### 3.1    FBI Detainer

Clark appears to argue that the detainer filed against him by the FBI was illegal and violated the IAD because Clark asserts there were no federal charges actually filed against Clark at the time the detainer was lodged against him. Clark cites to a November 15, 2010 letter from Chief Judge Charles Clevert which informed Clark that the clerk's docket showed he was not a party to any case then pending in the Eastern District of Wisconsin. However, it is undisputed that when the federal detainer was lodged against Clark, it was supported by a federal criminal complaint and an arrest warrant signed by Magistrate William Callahan in 10-M-554. While Judge Clevert's letter was not entirely inaccurate, as criminal complaints and warrants are not placed on the district court docket sheet and made public until a defendant appears in federal court for an initial appearance on the complaint, the fact remains that a charge was pending against the defendant when the FBI lodged the detainer against him. The defendant's argument assumes that, because the criminal complaint was not filed on a docket, it was not a pending charge. However, the defendant provides no authority for this position. Indeed, Fed.R.Crim.P. 3 states a "complaint is a written statement of the essential facts constituting the offense charged. It must be

made under oath before a magistrate judge…" Thus, Rule 3 implies that once a complaint is made under oath before a magistrate, the charges embodied in it are pending against the defendant. What is more, the court does not find persuasive the defendant's argument that Judge Clevert's letter should govern whether there were any pending charges against the defendant at the time the detainer was lodged against him. As just discussed, the letter, while not technically inaccurate, does not tell the whole story here. Accordingly, the court will adopt the magistrate's recommendation in this regard.

In his amended motion to dismiss based on a violation of the IAD, Clark argues that, under the IAD, the only charge that the government can pursue against him in the indictment is the charge contained in the criminal complaint in 10-M-554 – that is, the August 18, 2010 robbery of the Pyramax Bank. IAD Article V(d) states: "[t]he temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations, or complaints which form the basis of the detainer or detainers or for prosecution on any other charge or charges arising out of the same transaction." 18 U.S.C. spp. § 2, art. V(d). The magistrate concluded that the United States did not receive temporary custody of the defendant pursuant to a request made under the IAD, but rather via a writ of habeas corpus ad prosequendum issued by the court on February 15, 2011. In turn, the magistrate found that the IAD, including Article V's limitations, was inapplicable to Clark's case.

While the court ultimately agrees with the magistrate's recommendation to deny Clark's motion, the court must disagree with her reasoning. This is because the Supreme Court has made clear, in *United*

*States v. Mauro*, 436 U.S. 340 (1978), that a writ of habeas corpus ad prosequendum constitutes a "written request for temporary custody" within the meaning of Art. IV(a) of the IAD. And, therefore, if the federal government lodges a detainer against a defendant and then obtains a writ of habeas corpus ad prosequendum demanding the prisoner's presence in federal court on a certain day, the IAD is applicable. Yet, in the end, it makes little difference that the IAD applies in this case as it can easily be said that the charges contained in the February 8, 2011 indictment form the basis of the detainer. Clark provides this court with no support for his assertion that only the charges contained in the criminal complaint can form the basis for the federal detainer. Indeed, this court is of the opinion that, although the federal detainer was first lodged only on the basis of the charges contained in the criminal complaint, once the indictment was returned with additional charges against the defendant, these charges also formed the basis for the federal detainer against the defendant. Therefore, no violation of Article V(d) occurred, and the court will adopt the magistrate's recommendation.

### 3.2 Anti-Shuttling Provisions

Clark also maintains that the indictment must be dismissed because the United States violated the anti-shuttling provision under Article IV(e) of the IAD by returning him to state custody without first trying him on the federal indictment underlying the detainer. Article IV(e) of the IAD provides:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

18 U.S.C. app. § 2, art. IV(e).

However, it appears that Clark's argument is without support as he was never returned to the state of Wisconsin after being brought into federal custody on the writ. (*See* Docket #39-1). Instead, the U.S. Marshals Service maintained Clark as a federal prisoner at the Milwaukee County Criminal Justice Facility from February 25, 2011 – when he made his initial appearance on the indictment in federal court – to the present. (*Id.*). Moreover, as of March 15, 2011, when Clark's state sentence expired, the IAD was no longer applicable. Thus, any alleged "shuttling" of Clark after this time period was not in violation of the IAD. Furthermore, even if the court assumes Clark had been returned to the state of Wisconsin, the IAD does not require dismissal of an indictment when the United States is the receiving state and the defendant has notice of an order of the court for the return. 18 U.S.C. app. §9(2). The court made an oral ruling on February 25, 2011, noting that Clark could be returned to state custody with a federal detainer lodged against him. (Docket #8). Accordingly, the court finds there was no violation of Article IV(e) of the IAD.

### 3.3    Article IV(c) of the IAD - Speedy Trial Implications

In an August 2, 2011 motion, Clark also seeks dismissal under Article IV(c) of the IAD. The defendant asserts that he was not brought to trial within one hundred and twenty days of being taken into federal custody on the charges he now faces, in violation of Article IV(c) of the IAD. Article IV(c) provides that in any proceeding "made possible by this article, trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the

prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." 18 U.S.C. app. § 2, art. IV(c). The defendant maintains that he was brought into federal custody on February 25, 2011, and, therefore, his trial had to be commenced by June 25, 2011. In turn, he argues that such failure mandates dismissal of the indictment with prejudice. What Clark fails to account for is that his state sentence concluded on March 15, 2011, and the provisions of the IAD do not apply subsequent to the completion of a federal defendant's state sentence, even if the detainer remains on file. *See United States v. Roy*, 830 F.2d 628, 633, n. 3 (1987). Accordingly, the court will adopt the magistrate's recommendation, and deny Clark's motion in this respect.

4.     Motions to Suppress Evidence

It appears that Clark's motions seek suppression of buccal swabs taken from him by a Milwaukee Police detective on October 11, 2010, pursuant to a warrant issued by a Milwaukee County Court Commissioner. In his first motion (Docket #22), defendant argues that the buccal swabs should be suppressed because the warrant misidentified the person from whom the court authorized the police to take buccal swabs. He also asserts that the buccal swabs should be suppressed because the warrant has not been returned in accordance with the Federal Rules of Criminal Procedure or, alternatively, with state statutory provisions.

4.1     Particularity Requirement

The Fourth Amendment requires warrants to contain a "particular description" of the things to be seized. *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). "A search warrant must describe the objects of the search

with reasonable specificity, but need not be elaborately detailed." *United States v. Reed*, 726 F.2d 339, 342 (7th Cir. 1984). It is not necessary that the warrant "enable authorities 'to minutely identify every item for which they are searching.'" *United States v. Pritchard,* 745 F.2d 1112, 1122 (7th Cir.1984) (quoting *United States v. Prewitt,* 553 F.2d 1082, 1086 (7th Cir. 1977)). A description is valid if it is "specific as the circumstances and the nature of the activity under investigation permit." *United States v. Shoffner*, 826 F.2d 619, 631-32 (7th Cir. 1987) (internal citations omitted).

In this case, the warrant issued on October 11, 2010, authorized any law enforcement officer of the State of Wisconsin to obtain buccal swabs from "Ernest F. Clark, B/M, 11-01-1986 at the City of Milwaukee Prisoner Processing Center." (Docket #22-2). Although the warrant incorrectly identifies the defendant's date of birth, a correct date of birth is not necessarily required to identify a person with particularity. All that is required is reasonable specificity, not supertechnical details that may not have any bearing on the relevant authority's ability to identify that person. Indeed, in the case relied upon by defendant in arguing that a correct birth date is required, *Connecticut v. Tramantano*, 28 Conn.Supp. 325, 260 A.2d 128 (Conn. Super. 1969), while the state court found that a birth date was consistent with the constitutional requirements of a particular description, the court by no means held that a birth date was required to identify a person to be searched. Moreover, the *Tramantano* court held that a search warrant erroneously describing the defendant as "Bella" rather than "Blanka" Rosenfeld did not require that a motion to suppress be granted. *Id.* If the mistaken name of a defendant can be overlooked in analyzing the

particularity requirement, surely the same can be said for an erroneous birth date of a defendant who is otherwise described with sufficient particularity. Accordingly, this court finds that the search warrant complied with the Fourth Amendment's particularity requirement.

### 4.2    Rule 41

In his motion to suppress, the defendant also asserts that Rule 41(f) of the Federal Rules of Criminal Procedure was not followed.  Though he changed courses in his reply brief, arguing state statutory violations rendered the warrant invalid, the defendant's objections in response to the magistrate's recommendation revisit the Rule 41 issue.  Accordingly, the court will address these objections. Clark asserts that Rule 41 is applicable to the search warrant because it was sought and executed pursuant to a federal investigation, and the federal government took custody of the fruits of the search.  In support of this assertion, Clark cites to no authority from the Seventh Circuit. Without authoritative precedent on this issue, the court declines to make a ruling that Rule 41 applies to the search warrant in this case. Moreover, even assuming that Rule 41 is applicable, the alleged defects are technical in nature and, therefore, they do not call for or permit exclusion of what the search produced. *See United States v. Leon,* 468 U.S. 897 (1984). Accordingly, the court rejects Clark's Rule 41 argument.

### 4.3    State Statutory Violations

Next, the court will address Clark's argument concerning state statutory violations. According to Clark, the warrant was not returned within 48 hours as required by Wis. Stat. § 968.17(1). Additionally, Clark claims that no affidavit was "filed with the clerk within 5 days after the date of the execution of" the search warrant as required by Wis. Stat. § 968.17(2). As the

magistrate noted, however, a violation of either of these statutes does not necessarily require suppression of evidence seized under the relevant search warrant. Indeed, Wis. Stat. § 968.22 provides that "no evidence seized under a search warrant shall be suppressed because of technical irregularities not affecting the substantial rights of the defendant." Furthermore, the Wisconsin Supreme Court concluded that the duty to return the warrant within 48 hours and the duty to file the affidavit with the clerk within 5 days were only ministerial duties which did not affect the validity of the search absent prejudice to the defendant. *See State v. Elam*, 68 Wis.2d 614, 620, 229 N.W.2d 664 (Wis. 1975); *State v. Meier*, 60 Wis.2d 452, 210 N.W.2d 685 (Wis. 1973). The magistrate found that the defendant had not established he was prejudiced by a violation of either of the state statutes and, thus, recommended that this court deny Clark's motion to suppress in this regard.    In his objections to the magistrate's recommendation filed with this court, the defendant now makes the argument that he was prejudiced by the statutory violations. First, the court notes that, although the defendant is a *pro se* litigant and, thereby, he is entitled to more leniency than a licensed attorney might be, Clark's practice of raising arguments well after the time in which he is required to make them does not sit well with this court. Indeed, any argument that Clark was prejudiced by the failure of the authorities to file the search warrant in a timely manner or by their failure to file an affidavit with the clerk's office has clearly been waived. The court warns Clark that any further untimely arguments on his part will also be deemed waived by this court.

Yet, even considering the substance of his objections, the court finds that Clark's argument regarding prejudice is without merit. First, it should

be noted that Clark has not sufficiently established that the alleged statutory violations indeed occurred. In support of this assertion, he merely references two letters from the Milwaukee County Circuit Court Clerk's Office that state a review of the 2010 search warrant records did not reveal a search warrant in Clark's name. (Docket #22-1). However, at the same time, one of the letters indicates that a case number or other identifying information may be helpful in determining whether a search warrant had been filed pertaining to Clark. (*Id.*). Thus, it is possible that the information provided by Clark to the clerk's office was not adequate. In any event, the court does not find these two letters conclusive on this point.

Moreover, even assuming a statutory violation occurred, Clark makes the general argument – regarding prejudice – that the failure to file the warrant within the time provided by statute prevented "a challenge to the total absence of probable cause for the warrant." (Docket #117 at 22). Yet, Clark is now challenging the search warrant. Thus, he has clearly not been prejudiced by any ministerial error in failing to file the warrant. Accordingly, without more of a showing of how he was actually prejudiced, the court declines to suppress evidence based on alleged statutory violations that have not, on their own, been adequately established by the defendant. Accordingly, the court will deny the defendant's motion to suppress in this regard.

### 4.4 *Riverside* Violation

Lastly, Clark argues that the taking of buccal swabs was the fruit of an unlawful detention in violation of his right to a prompt judicial determination of probable cause. Typically, "a person arrested without a warrant from a magistrate is entitled to (1) a hearing (2) before a judicial

officer where a wrong identification could be addressed (3) 'promptly after arrest.'" *Atkins v. City of Chicago*, 631 F.3d 823, 833 (7th Cir. 2011) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975)). Under this promptness standard, "judicial determinations of probable cause within 48 hours of arrest will, as a general matter," suffice unless the prisoner can prove unreasonable delay. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56–57 (1991).

Clark's objections argue that, though the probable cause determination by Milwaukee County Court Commissioner Patrice A. Baker occurred within 48 hours of his arrest, because the minor delay was motivated by a quest to gain additional evidence – Clark's DNA – it was unreasonable. However, Clark points to no evidence supporting this assertion. Based on the record, the delay in the holding of a probable cause hearing could have just as easily been caused by a delay in transporting Clark from one facility to another, or in handling late-night bookings where no court commissioner is readily available, or in obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, or other practical realities. *See County of Riverside v. McLaughlin*, 500 U.S. at 57. Accordingly, the court will adopt the magistrate's recommendation finding no *Riverside* violation.

5.      Due Process and Federal Rule of Criminal Procedure 5

Clark next argues that the delay between his arrest on October 8, 2010, and his first appearance in federal court on February 25, 2011, violated Rule 5 of the Federal Rules of Criminal Procedure and the due process clause of the Fifth Amendment.

Rule 5 requires that suspects who are arrested for committing federal crimes and held in federal custody must be presented to a magistrate "without unnecessary delay." Rule 5 applies only to suspects in federal custody. *United States v. Alvarez-Sanchez,* 511 U.S. 350, 358 (1994); *United States v. Carter,* 910 F.2d 1524, 1528 (7th Cir. 1990). In this case, the court has already found that Clark was in state custody from his arrest until his February 25, 2011, initial appearance before the magistrate in federal court. Accordingly, the court finds no violation of Rule 5. Moreover, the defendant does not appear to object to the magistrate's finding that the delay between the defendant's arrest and his initial appearance in federal court did not violate due process protections. As this court finds no reason to upset this conclusion either, the court will adopt the magistrate's recommendation.

6.      Return of Seized Property

The defendant also argues that, pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, the FBI and the Milwaukee Police Department must return clothing in the trunk of a vehicle he was driving when arrested on October 8, 2010. Again, Clark's argument is premised on the fact that the arrest was a federal arrest in connection with a federal charge of armed robbery. However, the court agrees with the magistrate that because the property is not in the possession of the FBI or the federal government – something Clark does not dispute – the United States is not the appropriate party from which to request its return. *See United States v. Solis*, 108 F.3d 722, 723 (7th Cir. 1997). Moreover, the court has no authority to order the MPD to return the defendant's property, as it is not a party to this case.

Accordingly, the court will not disturb the magistrate's ruling denying the defendant's motion for return of property pursuant to Rule 41(g).

7.      Request for Evidentiary Hearing

Lastly, the defendant objects to the magistrate's denial of an evidentiary hearing on the matter of whether Clark's arrest on October 8, 2010, was based on federal charges or could otherwise be construed as a federal arrest. The court does not find that the magistrate's denial of an evidentiary hearing on this matter was clearly erroneous or otherwise contrary to law. First, the magistrate made a factual determination in ruling on Clark's numerous pretrial motions that state officials arrested Clark for a state charge of fleeing an officer. This determination was made based on the record, which included both evidence supporting Clark's claim – namely, relevant portions of an audio recording of a custodial interview of the defendant and an arrest report – and evidence tending to show Clark was arrested by state officials for a state charge – an incident report from the Milwaukee Police Department. The magistrate concluded that an evidentiary hearing was unnecessary to make this determination, and this court finds no legitimate reason to disturb that conclusion. Indeed, Clark was not precluded from submitting evidence to support his argument – embodied in his pretrial motions – that his arrest was federal in nature. That he did not prevail in his argument, based on the evidence he set forth, does not mean he is entitled to an evidentiary hearing on the matter decided against him. Therefore, the court will affirm the magistrate's order denying Clark's request for an evidentiary hearing.

8.    Conclusion

In sum, after a review of Clark's belated objections to the magistrate's June 22, 2011 recommendation, the court finds no reason to overturn its August 2, 2011 order adopting the subject recommendation and denying Clark's motions addressed therein. Moreover, the court will adopt the magistrate's September 16, 2011 recommendation and will deny Clark's motions to dismiss based on a violation of the IAD and violations of due process. Lastly, the court will affirm the magistrate's orders denying Clark's request for an evidentiary hearing and his motion for return of property.

Accordingly,

IT IS ORDERED that the September 16, 2011 recommendation of Magistrate Gorence (Docket #103) that: (1) Clark's motion to dismiss the indictment based on a violation of the Interstate Agreement on Detainers be denied; and (2) Clark's motion to dismiss the indictment based on a violation of substantive due process be denied (Docket #71) be and the same is hereby ADOPTED;

IT IS FURTHER ORDERED that Clark's motion to dismiss the indictment based on a violation of the Interstate Agreement on Detainers (Docket #73) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that Clark's motion to dismiss the indictment based on a violation of substantive due process (Docket #71) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that the magistrate's order denying defendant's motion for return of property pursuant to Fed.R.Crim.P. 41(g) (Docket #103) be and the same is hereby AFFIRMED; and

IT IS FURTHER ORDERED that the magistrate's order denying the defendant's request for an evidentiary hearing (Docket #113) be and the same is hereby AFFIRMED.

Dated at Milwaukee, Wisconsin, this 16th day of November, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge