UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                        Plaintiff,

v.                                              Case No. 11-CR-30-JPS

ERNEST CLARK,

                        Defendant.                  ORDER

On February 8, 2011, a federal grand jury sitting in the Eastern District of Wisconsin returned a seventeen-count indictment against defendants Eric Griffin and Ernest Clark ("Clark") for their alleged involvement in multiple bank robberies and accompanying firearms violations. On February 25, 2011, Clark appeared before United States Magistrate Judge Patricia J. Gorence for arraignment, entering a plea of not guilty as to each of the charges against him. On August 2, 2011, the court granted defendant Clark's request to represent himself and stand-by counsel was appointed for him. On November 18, 2011, Magistrate Gorence issued a recommendation recommending denial of the following motions filed by Clark: (1) motion to suppress the fruits of an unlawful arrest (Docket #83); (1) motion to suppress alleged DNA evidence (Docket #88); and (3) motion for unconditional discharge for denial of a preliminary hearing. (Docket #84). On the same date, Magistrate Gorence also issued an order denying defendant's motion to compel discovery (Docket #110) and defendant's motion to strike docket entry #79. (Docket #116). On November 30, 2011, the defendant filed objections to the recommendation and order on the first four motions

mentioned above. The government responded to Clark's objections on December 5, 2011.

1. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B), a magistrate may consider dispositive motions and issue recommendations to the district judge regarding the motions. *See id.* When a party objects to a magistrate's findings, the district court judge must make *de novo* determinations as to these findings. *See id.* § 636(b)(1)(C); *see also Delgado v. Bowen,* 782 F.2d 79 (7th Cir. 1986). The district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate and has the final authority of judgment in the case. *Delgado,* 782 F.2d at 82. When a magistrate issues an order on a nondispositive motion, the court will only disturb the magistrate's order if it was clearly erroneous or otherwise contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed.R.Crim.P. 59(a) (defining procedure for nondispositive motions before a magistrate).

2. Background

In this case, Milwaukee Police Department officers arrested Clark on October 8, 2010. At the time of his arrest, Clark was wanted for armed robbery. Arrest reports indicate that Clark, who fled from officers, was ultimately arrested for the offense of fleeing an officer. Clark, on the other hand, argues he was arrested solely on suspicion of armed bank robbery. On October 12, 2010, Clark was charged in Milwaukee County Circuit Court with Felony Fleeing/Eluding an Officer in Case No. 2010CF00516. On that same day, Clark was also charged by criminal complaint in the Eastern District of Wisconsin, Case No. 10-M-554, with armed robbery of the

Pyramax Bank on August 18, 2010, and with using a firearm in furtherance of a bank robbery. Magistrate William Callahan signed a warrant for Clark's arrest and, pursuant to the warrant, the Federal Bureau of Investigation filed a detainer against Clark with the Milwaukee County Sheriff, who was holding Clark on the state eluding charge. On November 23, 2010, Clark was sentenced to 7 months in jail on the state eluding charge. On February 8, 2011, a federal grand jury sitting in the Eastern District of Wisconsin returned an indictment charging Clark with six counts of armed bank robbery and six counts of using a firearm in furtherance of the bank robberies. The robberies are alleged to have taken place at six Milwaukee area banks between October of 2008 and August of 2010. Clark made his initial appearance and was arraigned on these charges on February 25, 2011.

3. Motions to Suppress

Clark asserts that he was arrested on October 8, 2010, without a warrant or probable cause, and, therefore, any evidence subsequently taken from him is the fruit of his illegal arrest and must be suppressed. However, the court finds that there was probable cause to arrest Clark on October 8, 2010, and his motion will be denied.

First, Clark maintains that his arrest was solely for armed bank robbery and that the government has failed to show probable cause existed for such an arrest. Though the police certainly wanted Clark for armed bank robbery, the arrest report indicates that Clark was also arrested for fleeing an officer in violation of Wis. Stat. § 346.04(3). (Docket #'s 20-1, 31-1). However, Clark asserts that the fleeing offense was merely a traffic citation and, thus, it cannot constitute the basis for an arrest. This argument is belied by the fact that Clark was ultimately convicted of the criminal offense of fleeing or

eluding an officer in Milwaukee County Circuit Court Case No. 2010CF00516. The public records of this case demonstrate that the offense was classified as a Class I felony. Thus, the fleeing offense for which Milwaukee police officers arrested Clark was not a simple traffic citation, but rather a criminal offense. As the Supreme Court has held, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Largo Vista*, 532 U.S. 318, 354 (2001).[1] Accordingly, whether or not there was probable cause to arrest Clark for armed robbery, the state fleeing offense – on its own – was sufficient to justify Clark's October 8, 2010 arrest, so long as the arresting officer had probable cause to believe that Clark had committed that crime. The court finds that officers did indeed have probable cause to arrest Clark for fleeing an officer as the arrest report clearly indicates that Clark fled from a marked squad car with its lights and siren activated. (Docket #20-1). Clark does not dispute this. What is more, a state court commissioner found probable cause for the state fleeing offense and the state armed bank robbery offenses within 48 hours of Clark's arrest. (*See* Docket #40-1). The court finds no fault with these probable cause determinations. Therefore, the court concludes that Clark's arrest was lawful. As such, the court will adopt the

---

[1] Clark appears to argue that because he received a citation for the fleeing offense, his arrest could not have been for the eluding charge. However, Wis. Stat. § 968.085 allows for the issuance of a citation, not only "instead of," but also "subsequent to a lawful arrest."

magistrate's recommendation and will deny Clark's motion to suppress the fruits of an unlawful arrest.[2]

The defendant has also moved to suppress evidence – a pillow case and a pair of gloves, as well as DNA evidence found on those items – arguing that the evidence was seized without a warrant in violation of Clark's Fourth Amendment rights. The police found the gloves and pillow case on the rooftop of a garage, after being led there by the defendant's accomplice, Jeffrey Moore ("Moore"), who told police that he and Clark hid the items on the rooftop after the robbery.

The magistrate found that Clark had no reasonable expectation of privacy in the items placed by Moore on the rooftop of the garage and, thus, she found no Fourth Amendment violation occurred when the authorities seized those items. Clark argues that the magistrate erred in focusing on whether he had a valid privacy interest in the items seized because he avers that the existence of a privacy interest is relevant only to the constitutionality of a search, not a seizure. In making this argument, Clark appears to contend that he had some type of possessory interest in the gloves and pillow case, and that this is the only relevant inquiry pertaining to whether the seizure of the items comports with the Fourth Amendment's reasonableness requirement.

---

[2] Clark also argues that, even if the arrest was lawful, his subsequent detention was not and, therefore, any DNA evidence seized during that detention must be suppressed. This claim, however, was previously addressed in Clark's *Riverside* motion (Docket #31) and denied by this court. (Docket #119). The court finds no reason to revisit that decision.

A Fourth Amendment "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property. *United State v. Jacobsen*, 466 U.S. 109, 113 (1984). Thus, whether Clark had a possessory interest in the items seized is certainly relevant to the question of whether a seizure occurred that implicates Clark's Fourth Amendment rights. However, this is not to say that Clark's privacy interest in the gloves and pillow case is irrelevant. Indeed, assuming that Clark had some type of protected possessory interest in the gloves and pillow case, the fact that he demonstrated no reasonable expectation of privacy in the items is highly relevant to the reasonableness of the authorities' conduct in seizing those items. *See id.* at 121 (stating "it is well-settled that it is constitutionally reasonable for law enforcement officials to seize 'effects' that cannot support a justifiable expectation of privacy without a warrant, based on probable cause to believe they contain contraband.").

Here, according to a statement given by Moore, Clark had worn the gloves and the pillowcase as a mask when he committed a bank robbery. (*See* Docket # 93-1). Thus, the police had probable cause to believe that the gloves and pillowcase constituted evidence of a crime. Moreover, Moore stated that, after fleeing the scene of the robbery, he and Clark walked down an alley and tossed the gloves and pillowcase on top of a garage. (*Id.*). Moore then showed the officers where to find these items. (*Id.*). Though Clark's and Moore's intent in discarding these items on the rooftop of a random garage may have been to conceal these items, it does not necessarily follow that Clark held an actual subjective expectation of privacy and that the expectation "is one that society is prepared to recognize as reasonable."

*United States v. Villegas*, 495 F.3d 761, 767 (7th Cir. 2007). Accordingly, because Clark has not demonstrated a justifiable expectation of privacy in the gloves and pillowcase, and because the authorities had probable cause to believe the items were evidence of a crime, the seizure of the gloves and the pillow case was reasonable.[3] Thus, the court will adopt the magistrate's recommendation denying Clark's motion to suppress.

4.   Right to Preliminary Hearing

Next, the defendant seeks release from custody on the grounds that he was not afforded a preliminary hearing. Specifically, Clark contends that he was arrested and held in custody pursuant to the October 12, 2010, criminal complaint in the Eastern District of Wisconsin, Case No. 10-M-554; yet, he was not afforded a preliminary hearing on that complaint within the time prescribed by Fed.R.Crim.P. 5.1(c).

Rule 5.1(a) provides that "if a defendant is charged with an offense other than a petty offense, a magistrate judge must conduct a preliminary hearing unless…the defendant is indicted." Additionally, Rule 5.1(c) requires the magistrate judge to hold the preliminary hearing "within a reasonable time, but no later than 14 days after the initial appearance if the defendant is

---

[3]Though neither party addresses this issue in detail, the court notes that it is highly debatable that Clark even had a possessory interest in the gloves and pillowcase as Moore's statements to police suggest the two suspects abandoned the gloves and pillowcase. *Abel v. United States*, 362 U.S. 217, 241 (1960)("Abandoned property is not subject to Fourth Amendment protection."); *United States v. Basinski*, 226 F.3d 829, 836 (7th Cir. 2000) ("To demonstrate abandonment…[there must be evidence] that the defendant's voluntary words or conduct would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item searched or seized."). Here, the evidence indicates that the defendant relinquished any property interests in the items when he discarded them after the alleged robbery.

in custody and no later than 21 days if not in custody." Thus, Rule 5.1(c)'s time limits within which a preliminary hearing must be held are premised on a defendant's initial appearance. But, what happens when, as was the case here, a defendant, though charged in a criminal complaint, has not made an initial appearance on that complaint?

To answer that question, the court must first look to when an initial appearance is required in a criminal case. Typically, Rule 5 requires that suspects who are arrested for committing federal crimes and held in federal custody must be presented to a magistrate "without unnecessary delay." Fed.R.Crim.P. 5(a)(1)(A). However, Rule 5 applies only to suspects in federal custody. *United States v. Alvarez-Sanchez,* 511 U.S. 350, 358 (1994); *United States v. Carter,* 910 F.2d 1524, 1528 (7th Cir. 1990). As the court found in its November 16, 2011 order, Clark was not in federal custody, but rather in state custody, from his October 8, 2010 arrest until he first appeared before the magistrate in federal court on February 25, 2011. Thus, there was no requirement that Clark make an initial appearance until he was released to federal custody. Because Clark was never in federal custody, pursuant to the criminal complaint, and he did not make an initial appearance on that complaint, he could not have been deprived of a timely preliminary hearing in violation of 5.1(c).

Moreover, on February 8, 2011, the defendant was indicted. Clark made an initial appearance before the magistrate on February 25, 2011. Yet, because the defendant was indicted, the magistrate was not required to conduct a preliminary hearing. *See* Fed.R.Crim.P. 5.1(a)(2). Accordingly, the

court will adopt the magistrate's recommendation denying Clark's motion for unconditional discharge for denial of a preliminary hearing.

5.      Motion to Compel Discovery

In Clark's motion to compel discovery, he sought a variety of information, including exculpatory and impeachment evidence, Jeffrey Moore's plea agreement, grand jury transcripts, and lists of government witnesses. In light of the government's assertion that it would provide much of the information the defendant sought, the fact that defendant had not shown that the government failed to follow its "open file" policy for discovery, and the fact that the defendant's request for some of the items was premature, the magistrate denied the defendant's motion to compel discovery. The court does not find this conclusion clearly erroneous and, therefore, it will not disturb the magistrate's order denying Clark's motion to compel.

6.      Motion to Conduct Scientific Examination

The defendant also objects to the magistrate's November 18, 2011 order, authorizing him to engage a DNA expert to review raw DNA data extracted by a government analyst from the pillowcase and gloves that were purportedly used in an armed robbery committed by the defendant. The defendant argues that his motion in this respect did not seek an examination of laboratory test results or raw data. Rather, Clark argues that he should be afforded the opportunity to conduct his own DNA analysis on the pillowcase and gloves and not be required to rely on data obtained by the prosecution's experts. Clark's argument is premised on allegations of fraud and the presentation of false evidence. The magistrate found these allegations to be unsupported, but nevertheless granted the defendant leave to engage an

expert for the limited purpose of reviewing the raw data and drawing conclusions from that data.

Under Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure, the Government "must permit the defendant to inspect and to copy or photograph" all documents, tangible objects, and similar items that the government possesses if: "(I) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Thus, on the one hand, the right to test or retest evidence previously analyzed by prosecution experts could be implied from Rule 16, which permits the inspection of tangible evidence. *See e.g. United States v. Vaughn*, 736 F.2d 665, 666 (11th Cir. 1984) (finding that "[d]efendants could have obtained their own analysis of the [cocaine] samples"); *United States v. Gaultney*, 606 F.2d 540, 545 (5th Cir. 1979) (stating that "[i]n cases involving a controlled substance, courts have held a concomitant part of the examination or inspection to be the right of the accused to have an independent chemical analysis performed on the seized substance"); *United States v. Sullivan*, 578 F.2d 121, 124 (5th Cir. 1978) (stating that the right of inspection "includes the right to have an expert examine the narcotics before trial").

On the other hand, the court finds no controlling case law in the Seventh Circuit that reads Rule 16 so broadly as to require an opportunity for the defendant to retest evidence when raw data is available for independent analysis by a defense expert, especially when there is no discernible reason to question the reliability of that raw data. Indeed, here, the defendant will not only have his own expert to independently analyze the data and perhaps

even evaluate the process by which the prosecution's analyst isolated the DNA, but Clark will also have the opportunity to cross-examine the prosecution's expert as to the procedures he used and his conclusions. Moreover, the defendant has not provided this court with a colorable reason for why the raw data would be inaccurate – other than that the gloves and pillowcase were not obtained directly from the defendant. Based on the lack of controlling case law and the facts of this case, the court finds that the magistrate's decision to limit Clark to a review of the data compiled by the government's analyst is not clearly erroneous or contrary to law. Accordingly, the court will not disturb the magistrate's order granting Clark's motion to conduct a scientific examination.

7.  Substantive Due Process

Lastly, on November 30, 2011, the defendant filed a motion for consideration of objections. (Docket #124). The court will grant this motion. Specifically, Clark asks that the court consider his objections to the magistrate's recommendation denying his substantive due process claim. Clark argues that the delay between the issuance of the federal criminal complaint and his initial appearance in federal court deprived him of substantive due process.

As the court has already held – in its consideration of Clark's motions based on speedy trial violations – Clark was not arrested and placed in federal custody or subject to any federal action depriving him of his liberty until he was temporarily released from state custody to make his initial appearance before the magistrate on February 25, 2011. Thus, the filing of a federal criminal complaint against him in October of 2010 was not an act that triggered the substantive due process protections of the Fifth Amendment.

Nor was the filing of a federal detainer against Clark, coupled with the filing of the complaint, a federal action depriving Clark of his liberty. Accordingly, the court finds no reason to overturn its November 16, 2011 order adopting the magistrate's recommendation denying Clark's motion to dismiss the indictment based on substantive due process violations.

Accordingly,

IT IS ORDERED that the November 18, 2011 recommendation of Magistrate Gorence (Docket #122) that: (1) Clark's motion to suppress the fruits of an unlawful arrest be denied (Docket #83); (2) Clark's motion to suppress alleged DNA evidence be denied (Docket #88); and (3) Clark's motion for unconditional discharge for denial of a preliminary hearing be denied (Docket #84) be and the same is hereby ADOPTED;

IT IS FURTHER ORDERED that Clark's motion to suppress the fruits of an unlawful arrest (Docket #83) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that Clark's motion to suppress alleged DNA evidence (Docket #88) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that Clark's motion for unconditional discharge for denial of a preliminary hearing (Docket #84) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that the magistrate's order denying Clark's motion to compel discovery (Docket #122) be and the same is hereby AFFIRMED;

IT IS FURTHER ORDERED that the magistrate's order granting Clark's motion to conduct a scientific examination of physical evidence (Docket #121) be and the same is hereby AFFIRMED; and

IT IS FURTHER ORDERED that defendant's motion for consideration of objections (Docket #124) be and the same is hereby GRANTED; however, the court finds no reason to overturn its November 16, 2011 order adopting the magistrate's recommendation that his motions to dismiss the indictment based upon alleged substantive due process violations be denied.

Dated at Milwaukee, Wisconsin, this 9th day of December, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge