# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br>v.<br><br>ERNEST CLARK,<br><br>                        Defendant. | Case No. 11-CR-30-2-JPS<br><br>**ORDER** |

On March 16, 2020, Defendant Ernest Clark ("Clark") filed a single-page motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Docket #243). The U.S. Department of Probation filed a memorandum, and the government filed a response to Clark's motion. (Docket #244, #246). Clark then filed a reply to the government's response, a sur-reply, and a motion to strike the sur-reply and file an amended sur-reply. (Docket #248, #252, #254). The Court will grant Clark's motion to strike the sur-reply and will consider the amended filing, instead. Additionally, the Court will consider the updated pages 6 and 7 of the sur-reply, as Clark requests. (Docket #255). The Federal Defender Service has declined to intervene in this case. (Docket #251). The Court therefore considers the motion fully briefed. For the reasons explained below, Clark's motion will be denied, but Clark may submit another motion if appropriate.

1. **RELEVANT FACTS**

On April 7, 1992, Clark was convicted of several counts of armed bank robbery, including an offense under 18 U.S.C. § 924(c), and was sentenced to 188 months' imprisonment. *See* Case No. 91-CR-290-LA

(Docket #163 at 1) (noting that the sentence was subsequently reduced to 185 months); *United States v. Clark*, 305 Fed. App'x 295, 296 (7th Cir. 2008).

Ten years later, on July 9, 2012, following a jury trial, Clark was convicted of twelve counts involving armed robbery, including six 924(c) offenses. He was sentenced to a total of 1,951 months' imprisonment. (Docket #189). During the jury trial, Cark provided false testimony and received an enhancement under U.S.S.G. § 3C1.1 for obstructing justice. *See* (Docket #246 at 2 n.1). His co-defendant, Eric Griffin, took a plea agreement and testified against Clark. Clark's sentence consisted of 151 months' imprisonment as to counts 1, 4, 6, 8, 12, and 15, to run concurrently with each other—the low end of the guideline range—and 300 months' imprisonment as to counts 2, 5, 7, 9, 13, and 16, to run consecutively to one another and to all other sentences.

In 2017, Clark was diagnosed with prostate cancer. As recently as June 2019, Clark was receiving treatment for this cancer. (Docket #248-1 at 7). Clark has also suffered from asthma, hypertension, and hyperlipemia. He is currently detained at Federal Correctional Institute 2 in Butner, North Carolina.

**2.     LEGAL BACKGROUND**

Title 18 United States Code Section 924(c)(1)(C), which governs gun-related crimes, used to read: "*In the case of a second or subsequent conviction under this subsection*, the person shall be sentenced to a term of imprisonment of not less than 25 years. . ." (emphasis added). This was understood to mean that "there [wa]s no requirement of separate indictments or an interval of punishment" between § 924(c) offenses in order to trigger the so-called stacking provision. *United States v. Cardena*, 842 F.3d 959, 1000 (7th Cir. 2016); *Deal v. United States*, 508 U.S. 129, 131–34

(1993) (superseded by statute). Thus, a defendant who was convicted of two or more § 924(c) offenses in the same indictment would be sentenced to an additional 25 years in prison for the second or subsequent counts, with each 25-year sentence to run consecutively any other sentences imposed. *See e.g.*, *United States v. Redd*, Case No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *2 (E.D. Va. Mar. 16, 2020) (defendant convicted of three § 924(c) offenses; the second and third § 924(c) offense triggered the stacking provision).

In 2018, the Congress amended Section 924(c) to read, "*In the case of a violation of this subsection that occurs after a prior conviction under this subsection has become final*, the person shall. . .be sentenced to a term of imprisonment of not less than 25 years. . ." 18 U.S.C. § 924(c)(1)(C) (emphasis added); First Step Act of 2018 § 403, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018) ("First Step Act"). The First Step Act makes clear that the 25-year sentence enhancement only applies if the defendant had a previous, final § 924(c) conviction, and was later charged and convicted under a new indictment with an additional § 924(c) offense. *Id.* In other words, § 924(c)(1)(C) cannot be used to enhance the sentence of multiple 924(c) offenses charged under the same indictment. This provision of the First Step Act does not apply retroactively. *Id.* § 403(b).

In a separate provision, the First Step Act enabled district courts to consider a defendant's motion for compassionate release and reduce the sentence, if appropriate. Specifically, "the court,. . .upon motion of the defendant. . .may reduce the term of imprisonment. . .after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that. . .extraordinary and compelling reasons warrant such a reduction. . .and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §

3582(c)(1)(A); First Step Act § 603(b). Previously, district courts had only been permitted to order such a reduction on a motion from the Bureau of Prisons.

The First Step Act therefore implemented a dramatic, non-retroactive sentencing amendment and conferred power to district courts to reduce sentences under extraordinary and compelling circumstances on motions made by defendants. The logical outcome of these provisions is that courts have granted compassionate relief motions to certain individuals who would not have been subject to the 25-year stacking provision had they been sentenced today. *See Redd*, 2020 WL 1248493, at *5–6 (concluding that "extraordinary and compelling developments" such as these may warrant a sentence reduction); *United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *7–9 (M.D. Tenn. Mar. 4, 2020) (finding that "the drastic change effected by the First Step Act's amendment of § 924(c) constitutes an extraordinary and compelling reason for a sentence reduction. . .at least when considered in conjunction with" other reasons such as defendant's age and rehabilitation); *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020) (finding a reduction in sentence warranted due to the "radically different sentence" that defendant would have received under the new statute, as well as defendant's rehabilitation); *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *5–7 (D. Utah Feb. 18, 2020) (determining that defendant's "age, the length of sentence imposed, and the fact that he would not receive the same sentence if the crime occurred today all represent extraordinary and compelling grounds to reduce his sentence."); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *4 (D. Neb. 2019) (finding that extraordinary and compelling reasons existed due to

"the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed.").[1]

Absent any guidance from the Seventh Circuit, and in light of the First Step Act's explicit purpose to "[i]ncreas[e] the use and transparency of compassionate release," this Court finds that it is not precluded from assessing whether this significant change in statute, alone or in combination with other factors, warrants a reduction in sentence under 3582(c)(1)(A). *See* First Step Act § 603(b) (subsection titled "Increasing the use and transparency of compassionate release."). The lack of retroactivity "simply establishes that a defendant sentenced before the [First Step Act] is not *automatically* entitled to resentencing; it does not mean that the court may not or should not consider the effect of a radically changed sentence for purposes of applying § 3582(c)(1)(A)." *O'Bryan*, 2020 WL 869475, at *1 (emphasis in original). Indeed, from a practical standpoint, "[i]t is not unreasonable for Congress to conclude that not *all* defendants convicted under § 924(c) should receive new sentences, even while expanding the

---

[1] There is some disagreement among district courts as to whether Congress's decision not to make the 924(c) amendment retroactive precludes a district court from finding, on an individual, case-by-case basis, that the sentence disparities resulting from the 924(c) amendment are compelling and extraordinary circumstances warranting a reduction in sentence. However, the tendency seems to be toward allowing consideration of the 924(c) amendment in compassionate release motions. *Compare United States v. Brown*, No. 4:05-CR-00227-1, 2020 WL 2091802, at *8, (S.D. Iowa April 29, 2020) (granting a motion for reconsideration and reducing a defendant's sentence pursuant to § 3582(c)(1) based, in part, on other courts granting such motions, noting that "although the Court cannot make § 403 of the First Step Act retroactive, it can still consider the resulting sentencing disparity as part of a motion for compassionate release.") *with United States v. Neubert*, No. 1:07-CR-00166-SEB-KPF, 2020 WL 1285624, at *3 (S.D. Ind. Mar. 17, 2020) (explaining that the 924(c) amendment and subsequent sentence disparity would not constitute extraordinary and compelling circumstances).

power of the courts to relieve *some* defendants of those sentences on a case-by-case basis." *Maumau*, 2020 WL 806121, at *7 (emphasis in original).

3.  **ANALYSIS**

In evaluating a motion for compassionate release, the Court must consider

> (1) whether [Clark] has exhausted his administrative remedies; (2) if he has exhausted his administrative remedies, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; (3) if a warranted reduction exists, whether such a reduction is consistent with applicable policy statements of the Sentencing Commission; and (4) if so, what sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

*Redd*, 2020 WL 1248493, at *4; 18 U.S.C. § 3582(c)(1)(A).

3.1  **Exhaustion**

Courts may only consider motions for compassionate release brought by the defendant after either (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Put another way, if the warden denies the request, the denial ought to be appealed; however, if 30 days lapse without a response from the warden, then the motion will be properly before the district court—no appeal is necessary because no response was received.

28 C.F.R. § 571.60 *et seq*. sets forth procedures for the implementation of § 3582(c)(1)(A). As relevant here, "[w]hen the Director, Bureau of Prisons, denies an inmate's request, the Director shall provide the inmate with a written notice and statement of reasons for the denial within 20 workdays

after receipt of the referral from the Office of General Counsel. A denial by the Director constitutes a final administrative decision." 28 C.F.R. § 571.63(c).

Clark attached a letter from the Bureau of Prisons that denies his motion for compassionate release, explaining that he "do[es] not meet the criteria to be considered." (Docket #243-1 at 1). It appears that his request for compassionate release reached the highest level of BOP and was denied, thereby rendering his claim exhausted. 28 C.F.R. § 571.63(c). Neither the government, nor probation, contests that Clark has adequately exhausted his administrative rights. Therefore, the Court will move onto the next element of Clark's claim.

### 3.2 Extraordinary and Compelling Circumstances

In *Redd*, the Court evaluated whether extraordinary and compelling reasons existed to reduce the sentence by considering (1) the sentence the defendant originally received compared to the one he would receive today; (2) the disparity between those sentences; and (3) the reason for that disparity. *Redd*, 2020 WL 1248493, at *5. There, the court determined that the disparity was "primarily the result of Congress' conclusion that sentences like [defendant's] are unfair and unnecessary." *Id.* at *6.

Clark's motion must be denied because the sentence that he would have received in 2012 is exactly the same as the one he would have received today. Recall that 924(c)(1)(C) was amended to clarify that the 25-year stacking provision for multiple, subsequent 924(c) convictions only applies if the defendant was previously convicted of a 924(c) offense *in another case*. 18 U.S.C. § 924(c)(1)(C). Therefore, if the defendant already had a 924(c) conviction in a separate case, then the stacking provision would be applicable as a mandatory, consecutive term. *Id*.

Page 7 of 11
Case 2:11-cr-00030-JPS    Filed 07/23/20    Page 7 of 11    Document 256

On April 7, 1992, Clark was sentenced to 188 months' imprisonment for charges of armed bank robbery, which included a 924(c) offense. *See* Case No. 91-CR-290-LA (Docket #163 at 1); *United States v. Clark*, 305 Fed. App'x 295, 296 (7th Cir. 2008). Ten years later, on July 9, 2012, following a jury trial, Clark was sentenced to a total of 1,951 months' imprisonment for another string of armed robberies, including seven 924(c) offenses. (Docket #189). This extremely lengthy sentence was the result of the implementation of § 924(c)(1)(C), which, then as now, requires courts to impose mandatory, consecutive 300-month sentences for subsequent 924(c) convictions that occurs *after* the first 924(c) conviction became final. 18 U.S.C. § 924(c)(1)(C). Thus, even under the statute as currently written, Clark would receive a mandatory, consecutive 300-month sentence for each subsequent 924(c) violation. *Id.* § 924(c)(1)(C), (D)(ii).

The Court has no grounds on which to reduce the sentence that was ultimately handed down. Clark's argument that his crime from 1992 was charged under an earlier, more lenient version of 924(c) is irrelevant for the Court's current inquiry, which is "would Clark have received the same sentence had he been sentenced on these 924(c) violations today?" The answer to that question is yes.

Clark's argument that the statute violates the Constitution's ex-post facto clause is equally unavailing. The Constitution prohibits Congress from passing laws that make conduct retroactively criminal. U.S. Const. art. I, § 9, cl. 3. That did not happen, here. Clark contends that when he was first convicted and sentenced for the 924(c) offense back in 1992, the statute did not contain language prohibiting the use of a firearm "in furtherance of" a crime of violence or drug trafficking, and now it does. *See* 18 U.S.C. § 924(c)(1) (1992) (stating only that a violation occurred if a person "during

Page 8 of 11
Case 2:11-cr-00030-JPS    Filed 07/23/20    Page 8 of 11    Document 256

and in relation to any crime of violence or drug trafficking crime. . .uses or carries a firearm."). However, this amendment has no bearing on Clark's convictions—when Clark committed his second run of armed robberies in 2008, it had been illegal to use a gun "in furtherance of" a crime of violence or drug trafficking for ten years. *See* (Docket #1); Criminal Use of Guns, Pub. L. No. 105-386, 112 Stat. 3469 (Nov. 13, 1998) (adding "in furtherance of" language to the statute). Moreover, the conduct that Clark was originally convicted of in the early 1990's—i.e., using or carrying a firearm "during and in relation to any crime of violence or drug trafficking crime"—remains a crime today. *See* 18 U.S.C. § 924(c)(1)(A). The ex post facto argument has absolutely no applicability to the facts of this case.

Not only would Clark receive the same sentence if he were sentenced for the same offenses today, but Clark's motion does not fall into any of the other categories for compassionate release. He does not provide any showing that his ailments are terminal, that they "substantially diminish[] [his] ability to provide self-care," that he suffers age-related deterioration, or that his family circumstances warrant his release. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). In his sur-reply, Clark argues for the first time that he is 52 years old, he has cancer, he is asthmatic, and he is currently being treated in a medical facility, all of which render him more vulnerable to a severe COVID-19 infection. However, the medical records that he attaches are from over a year ago and the current status of his cancer is not clear, though he explains in his motion that he is "a cancer patient" and that "his immune system is severely compromised." (Docket #252 at 7). At this juncture, the Court does not have a complete, up-to-date record of Clark's medical history, nor anything such as a physician's letter that might instruct the Court as to the gravity of Clark's risk at this moment. Therefore, at this

juncture, the Court must decline the motion for compassionate release. Having reached this conclusion, there is no reason for the Court to consider whether a reduction in sentence would be consistent with the policy decisions of the Sentencing Commission[2] or in compliance with 18 U.S.C. § 3553.

4. **CONCLUSION**

For the reasons explained above, the Court must deny Clark's motion for compassionate release. Clark's sentence, while very lengthy, is

---

[2]The government states the Court cannot grant compassionate relief motions outside the scope of the policy statements issued by the Sentencing Commission. In *Dillon v. United States*, 560 U.S. 817, 830 (2010), the Supreme Court confirmed that district courts must abide by the Commission's policy statements when reducing a term of imprisonment under § 3582(c)(2). Like § 3582(c)(1), § 3582(c)(2) requires reductions to be "consistent with applicable policy statements issued by the Sentencing Commission." Thus, as stated, this Court would have ensured that its determination was consistent with the *applicable* policy statements.

However, portions of the relevant policy statement at issue here are outdated and therefore *inapplicable* to motions such as these. *See e.g. id.* § 1B1.13 cmt. n.1(D) (a catch all provision leaving discretion to reduce sentences exclusively within the purview of "the Director of the Bureau of Prisons"). Because this provision is outdated and inapplicable, courts have held that it does not preclude courts from exercising discretion when circumstances warrant relief. *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019) (noting that because "the Commission's statutory authority is limited to explaining the appropriate use of sentence-modification provisions under the *current* statute. . .an amendment to the statute may cause some provisions of a policy statement to no longer fall under that authority.") (citing 28 U.S.C. § 994(a)(2)(C)); *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) (explaining that the old policy statement is "inconsistent with the First Step Act, which was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when BOP finds they are not appropriate."); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681–82 (N.D. Cal. 2019) (following "the growing number of district courts that have concluded that, in the absence of applicable policy statements, courts can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant compassionate release.") (internal quotations omitted).

not dramatically different than what he would have received had he been convicted and sentenced today. Moreover, Clark has not established his eligibility for compassionate release under any of the other provisions of U.S.S.G. § 1B1.13. At this juncture, there is no basis upon which the Court could grant Clark's requested relief.

Accordingly,

**IT IS ORDERED** that Clark's motion to strike his sur-reply and file an amended sur-reply (Docket #254) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that Clark's motion for compassionate release from custody (Docket #243) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 23rd day of July, 2020.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge